UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 1:19-cv-24521-GAYLES

**GEOVANNY PADRON**,

    Petitioner,

v.

**MARK S. INCH**,

    Respondent.

_____/

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

THIS CAUSE comes before the court on Petitioner Geovanny Padron's *pro se* Petition for Writ of Habeas Corpus (the "Petition") brought pursuant to 28 U.S.C. § 2254. [ECF No. 1].[1] Petitioner is challenging the constitutionality of his conviction and sentence entered following a jury trial in the Eleventh Judicial Circuit of Florida, Case No. F09-20775C. For its consideration of the Petition, the Court has received Petitioner's Memorandum [ECF No. 10], the State's Response [ECF No. 11] to the Court's order to show cause, along with a supporting appendix and state court transcripts [ECF Nos. 12, 13], and Petitioner's reply [ECF No. 16].

The Petition presents the following three claims for relief:

1. Counsel was ineffective for failing to depose state witness Milady Rodriguez prior to trial ("claim one"). (Pet. at 5.)

2. Counsel was ineffective for failing to object when a police witness testified that Petitioner failed to turn himself in ("claim two"). (*Id*. at 6.)

3. Counsel was ineffective for providing Petitioner with an unreasonable assessment of the strength of the State's case and his chances of acquittal, leading Petitioner to reject a favorable plea resolution ("claim three"). (*Id*. at 8.)

---

[1] The Court liberally construes the claims raised in the Petition because Petitioner proceeds *pro se*. *Winthrop-Redin v. United States*, 767 F.3d 1210, 1215 (11th Cir. 2014) ("[Courts] liberally construe pro se filings . . . ." (citation omitted)).

This matter is ripe for review. For the reasons stated in this Order, the Petition is DENIED because Petitioner is not entitled to relief on the merits.

## I.     Factual and Procedural History

Petitioner was charged with first degree murder, attempted first degree murder, burglary with assault while armed, and aggravated battery. [ECF No. 12-1 at 66-68]. The jury convicted Petitioner of first-degree murder, attempted second-degree murder, burglary with an assault while armed, and aggravated battery with a deadly weapon. *Id*. at 73-76. The court adjudicated Petitioner guilty and sentenced him to life imprisonment on the first-degree murder and armed burglary counts, thirty years' imprisonment on the attempted second-degree murder count, and fifteen years' imprisonment on the aggravated assault count. *Id*. at 78-88.

Petitioner appealed, arguing that the trial court erred in denying his motion for judgment of acquittal. *Id*. at 94. The appellate court summarized the evidence as follows:

> Felix Soto ("Soto") and Rafael Aguilera ("Aguilera") went to Giancarlo Castillo's ("Castillo") residence at 11:00 p.m. to confront him because they believed that Castillo was responsible for burglarizing Soto's home. According to witnesses who were at Castillo's residence, Soto and Aguilera knocked on Castillo's front door and asked Castillo to go outside to speak with them. When Castillo told them to leave and threatened to call the police, Soto and Aguilera left. A little while later, there was a second knock at Castillo's door. Castillo opened the door, and when Castillo tried to slam the door closed, the door was kicked in by the [Petitioner]. Soto, Aguilera, and the [Petitioner] entered and immediately attacked Castillo, Mario Fernandez ("Fernandez"), and Eric Edmundson ("Edmundson"), the male occupants who were present at Castillo's residence. Before they fled from Castillo's residence, Soto bludgeoned Fernandez with a machete, Aguilera beat Castillo to death with a baseball bat, and the [Petitioner] beat Edmundson unconscious.
>
> The [Petitioner]'s former girlfriend testified that when Soto and Aguilera returned from their first visit to Castillo's residence, they were upset and they convinced the [Petitioner] to go back to Castillo's residence with them. The [Petitioner] told his former girlfriend that he and his companions were going "to go see three people" and "they were going to fight with these people because they believed that they were the ones that had broken into the house." The former girlfriend told the police during their investigation that the [Petitioner] went with Soto and Aguilera "because there were three of them, and it had to be three against three." The former

>girlfriend further testified that after the [Petitioner] returned from Castillo's residence, the [Petitioner] told her that they entered Castillo's residence, they fought the occupants, and he knocked his opponent down.

*Padron v. State*, 220 So. 3d 500, 501-02 (Fla. 3d DCA 2017). The conviction and sentence were affirmed on appeal. *Id.* Petitioner's *pro se* motion for rehearing was denied. [ECF No. 12-1 at 196].

Petitioner then filed a motion for post-conviction relief. [*Id*. at 200-215]. Of relevance to the instant proceedings, Petitioner argued that his trial counsel was ineffective for failing to depose State witness Miladys Rodriquez and for failing to object when a police witness testified that Petitioner failed to turn himself in to police. The trial court denied the motion without a hearing. *Id*. at 451. The denial was affirmed on appeal. *Padron v. State*, 270 So. 3d 1236 (Fla. 3d DCA 2019) (table). Petitioner next filed a motion to correct an illegal sentence; however, the claims raised in that motion are not relevant to the instant proceedings.

## II.     Standard of Review

### A.     Standard of Review Under 28 U.S.C. § 2254

A district court may only entertain a petition for writ of habeas corpus from a "person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), the Court may grant habeas relief from the state court judgment only if the state court's decision on the merits of the federal claim was: (1) "contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented" in the state court proceeding. §§ 2254(d)(1)–(2).

"Deciding whether a state court's decision involved an unreasonable application of federal law . . . requires the federal habeas court to train its attention on the particular reasons — both legal and factual — why state courts rejected a state prisoner's federal claims, and to give

appropriate deference to that decision." *Wilson v. Sellers*, 584 U.S. ___, 138 S. Ct. 1188, 1191–92 (2018) (quotations and citations omitted). This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"A decision is 'contrary to' clearly established federal law if the state court applied a rule that contradicts governing Supreme Court precedent, or if it reached a different conclusion than the Supreme Court did in a case involving materially indistinguishable facts." *James v. Warden*, 957 F.3d 1184, 1190 (11th Cir. 2020) (citing *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A state court decision involves an 'unreasonable application' of clearly established federal law if the court identifies the correct legal principle but applies it unreasonably to the facts before it." *Id.* (citing *Williams*, 529 U.S. at 413). "The question under [the Antiterrorism and Effective Death Penalty Act of 1996] is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* at 1190–91 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "A state court's application of clearly established federal law or its determination of the facts is unreasonable only if no 'fairminded jurist' could agree with the state court's determination or conclusion." *Id.* at 1191 (quoting *McNabb v. Comm'r Alabama Dep't of Corr.*, 727 F.3d 1334, 1339 (11th Cir. 2013) (internal citations omitted)).

### B. Ineffective-Assistance-of-Counsel Principles

To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards and that he suffered prejudice as a result. *Strickland v. Washington,* 466 U.S. 668 (1984). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)

4

(citing *Yarborough v. Gentry,* 540 U.S. 1, 5–6 (2003) (per curiam)). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id*. (citations omitted). To obtain habeas relief, a petitioner must show the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner" when it rejected his claims of ineffective assistance of counsel. *Bell v. Cone*, 535 U.S. 685, 699 (2002). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.*

A § 2254 petitioner's allegations "must meet heightened pleading requirements" under Rule 2 of the Rules Governing § 2254 Cases. *McFarland v. Scott*, 512 U.S. 849, 856 (1994). Conclusory allegations of ineffective assistance are insufficient for relief under § 2254 or *Strickland*. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012). Likewise, a petitioner is not entitled to an evidentiary hearing under § 2254 "when his claims are merely conclusory allegations unsupported by specifics." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (citation and quotation marks omitted); *see generally Garlotte v. Fordice*, 515 U.S. 39, 46 (1995) ("[T]he habeas petitioner generally bears the burden of proof[.]").

### III.   Discussion

#### A.   Statute of Limitations and Exhaustion

As an initial matter, the State does not contest that the instant Petition was timely filed. The State also concedes that claims one and two have been exhausted. However, the State argues that claim three has not been properly exhausted because it was not raised in state court. [ECF No. 11 at 38-39]. Petitioner concedes that he did not raise claim three in state court but cites *Martinez v.*

*Ryan*, 566 U.S. 1 (2012), to argue that the claim should be considered because his post-conviction counsel was ineffective for failing to raise it in the motion for post-conviction relief.

An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. *See* 28 U.S.C. § 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Richardson v. Procunier*, 762 F.2d 429, 430 (5th Cir. 1985). In a Florida non-capital case, this means the applicant must have presented his claims in a district court of appeal. *See Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995). The claims must also be presented in state court in a procedurally correct manner. *Id.* "In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (internal quotations omitted).

Petitioner relies on the narrow exception to the exhaustion rule set forth in *Martinez*. There, the Supreme Court held that ineffective assistance of counsel during initial-review collateral proceedings may constitute cause to excuse a procedural default if the underlying claims are "substantial," meaning that they have "some merit." *Martinez*, 566 U.S. at 14. The rule in *Martinez* was intended to apply where "the state procedural framework, by reason of its design and operation, makes is highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 569 U.S. 413 (2013).

The State has not addressed the impact of *Martinez* on Petitioner's failure to exhaust his third claim; however, the State has argued that the claim itself is without merit. *Martinez* requires that the Court assess the merit of Petitioner's claim in determining whether the claim is substantial. *Martinez*, 566 U.S. at 14. As discussed below, the Petitioner has not raised a substantial claim of ineffective assistance of counsel to avoid the procedural bar for lack of exhaustion.

**B.     Counsel's Failure to Depose Miladys Rodriguez**

In his first claim, Petitioner contends that his trial counsel was ineffective for failing to depose Miladys Rodriguez prior to trial. He argues that if his trial counsel had deposed Rodriguez, he would have discovered that she was the 9-1-1 caller who reported Petitioner to the police and that she was involved in drug trafficking activities with members of Petitioner's family. Petitioner claims that his trial counsel could have used this information to impeach Rodriguez's testimony at trial. This claim was previously raised in the motion for post-conviction relief. The state court summarily denied the claim as insufficient to warrant relief.

Petitioner's claim here is based on his allegation that Rodriguez, his "on-again off-again girlfriend," had a motivation to fabricate her trial testimony and that she had made prior inconsistent statements that would undermine that testimony. He argues that Rodriguez's testimony was the "key nexus" between the acts committed by his co-defendants and his involvement as a principal. The State argues that this claim should be denied because the question of whether Rodriguez was biased was brought out in cross-examination during trial.

The State further notes that the issue of whether deposing Rodriguez would have altered the trial was addressed at the hearing on the motion for new trial. During that hearing, Petitioner's trial counsel explained how he might have altered his cross-examination had he known Rodriguez was the 9-1-1 caller. [ECF No. 13-9 at 41-46]. The court found that despite counsel not deposing

7

Rodriguez, he was nevertheless able to cross-examine her "the same way that [he] would have had he known" the information about the 9-1-1 call and the grow house. *Id*. at 59. The transcripts of the cross-examination support the state court's finding. [ECF No. 13-8 at 785-825].

"[T]he failure to interview or take the depositions of the State's witnesses for impeachment purposes is not prejudicial *per se*." *Aldrich v. Wainwright*, 777 F.2d 630, 636 (11th Cir. 1985). To show prejudice, Petitioner must identify "specific information that would have been revealed by depositions or interrogatories and would have added to the impeachment of the State's witnesses." *Id*. Here, defense counsel conducted an extensive cross-examination. In finding that counsel's cross-examination would not have been materially different, the state court necessarily found that Petitioner was not prejudiced by his counsel's failure to depose Rodriguez. This Court agrees. Because there was no prejudice, Petitioner cannot establish that he was denied effective assistance of counsel and this claim is denied.

### C. Counsel's Failure to Object to Testimony that Petitioner did not Surrender

In his second claim, Petitioner argues that his counsel was ineffective for failing to object when a police witness testified that, unlike his two co-defendants, Petitioner failed to turn himself in. Petitioner claims that because he was unaware that the "police had potentially implicated him as an abettor or wanted to arrest him" it was improper for the State to elicit such testimony from the detective. He contends that he was prejudiced by this testimony because it undermined his independent act theory of defense. This claim was also previously raised in the motion for post-conviction relief. The state court also summarily denied this claim.

The State argues that this claim should be denied here because Petitioner's trial counsel had no reason to object to the officer's testimony. According to the State, this testimony showed Petitioner's consciousness of guilt and was, therefore, properly admitted as relevant evidence. *See*

*Escobar v. State*, 699 So. 2d 988, 995 (Fla. 1997). Petitioner's claim fails because he cannot establish either deficient performance or prejudice. As argued by the State, such consciousness of guilt evidence was relevant and admissible. Therefore, Petitioner cannot establish that his counsel's performance was deficient for failing to object to that testimony. Further, Petitioner was not unduly prejudiced as the testimony complained of was brief and the State made no further use of it in the evidentiary phase or closing arguments. At best, this testimony was a passing reference which, considering the other evidence, did not reasonably contribute to the jury's verdict. Accordingly, this claim is denied.

### D.     Counsel's Failure to Advise Regarding Plea Offer

In his third claim, Petitioner alleges that he rejected a favorable plea offer due to counsel's "unreasonable assessment" of the state's case. Petitioner alleges that he never wanted to go to trial and had agreed to an offer of ten years' imprisonment "early in the case." According to Petitioner, plea negotiations ended because he "refused to lie and testify that his co-defendants told him" they were going to arm themselves, break into the victim's house, and cause serious injury. After plea negotiations broke down, Petitioner dismissed his appointed counsel prior to trial. Petitioner claims his new counsel told him he would succeed at trial and that no competent attorney had ever lost a case where a defendant, who never touched the victim, was charged as a principal to a violent crime. Petitioner claims that, based on his trial counsel's assessment, he rejected an offer of twenty years' imprisonment made on the day of jury selection.

This claim was not raised in state court and is not, therefore, properly exhausted. The determination of whether this court should consider the claim despite the lack of exhaustion depends on whether the claim is substantial. *See Martinez*, 566 U.S. at 14. The State has argued that the claim is without merit.

Ineffective assistance of counsel claims in the plea-bargaining context are governed by *Strickland*'s two-part test. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citation omitted). Therefore, Petitioner must demonstrate that his counsel's performance was deficient in plea-bargaining and that he was prejudiced by that deficiency. *See Gissendaner v. Seaboldt*, 735 F.3d 1311, 1317 (11th Cir. 2013). In *Frye*, "the Court specifically held that counsel has a 'duty to communicate formal offers from the prosecution to accept a plea,' and that, in general, where such an offer is not communicated to the defendant, counsel '[does] not render the effective assistance the Constitution requires.'" *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (quoting *Frye*, 566 U.S. at 145). To demonstrate prejudice, Petitioner "must show that, but for the ineffective assistance of counsel, a reasonable probability existed that: (1) the plea offer would have been presented to the court (i.e. the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances); (2) the court would have accepted its terms; and (3) under the offer's terms, the conviction or sentence, or both, would have been less severe than under the judgment and sentence that were, in fact, imposed." *Carmichael v. United States*, 966 F.3d 1250, 1259 (2020) (citing *Lafler v. Cooper*, 566 U.S. 156, 163 (2012)).

Even construing Petitioner's allegations in the most favorable light, he has not established a substantial claim of ineffective assistance of counsel. Petitioner alleges that on the day of jury selection he overheard the prosecutor tell his counsel that all they had for Petitioner at the moment was "20 mandatory." This allegation is not sufficient to establish that a plea offer was made by the State or that such an offer would have been presented to the court. *See Carmichael*, 966 F.3d at 1259. In fact, the State contends that no such plea offer was ever extended to Petitioner. If anything, Petitioner has merely alleged that there was a possibility that the State might be willing to reopen plea negotiations. He has certainly not met the burden to obtain relief on this claim.

Prior to trial, the state court held multiple hearings regarding plea negotiations. [ECF No. 13-1 to 13-7]. At the first such hearing, the State offered a sentence of ten years' imprisonment followed by ten years' probation. [ECF No. 13-1 at 7]. In making that offer, the prosecutor explained that "as soon as I gear up to prep for trial, I'm not going to be offering any plea offer at all." *Id*. Petitioner rejected that plea offer, explaining that he was "thinking like six and seven." *Id*. The court agreed to give Petitioner more time to think about the plea. *Id*. The State subsequently allowed the offer to be extended for another week. [ECF No. 13-2 at 3]. At a subsequent hearing, defense counsel advised the court that she was in the process of working out a written plea agreement with the State. [ECF No. 13-3 at 4]. The case was reset for a plea hearing. *Id*. At the next hearing, counsel for Petitioner and the State requested another continuance to finalize a written plea agreement. [ECF No. 13-4]. Ultimately, there was no agreement.

The record shows the plea negotiations continued for several months, but Petitioner was unwilling to accept the State's offer of ten years' imprisonment. The record does not reflect any additional plea negotiations such as the offer alleged by Petitioner. Petitioner's bare allegation of a vague plea offer of twenty years' imprisonment is insufficient to establish this as a substantial claim that should be considered despite the lack of exhaustion and procedural default. It is not reasonable to conclude that after refusing an offer of ten years' imprisonment, Petitioner would have agreed to a sentence of twenty years' imprisonment. Nor is it reasonable to conclude that the State would have made such an offer after stating that once trial preparation had begun, all plea offers would be withdrawn. If this claim were not procedurally barred, it would be denied on the merits.

### IV. Certificate of Appealability

Rule 11(a) of the Rules Governing § 2254 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* Rules Governing § 2254 Proceedings, Rule 11(b), 28 U.S.C. foll. § 2254.

Based on this record, Petitioner is not entitled to a certificate of appealability. "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To merit a certificate of appealability, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *see also Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). For the reasons stated above, the Court finds that Petitioner's claims are without merit and he cannot satisfy the *Slack* test.

Having considered the Petition, the record, and being fully advised, it is hereby

**ORDERED AND ADJUDGED** that:

1. This Petition [ECF No. 1] is **DENIED**.
2. No certificate of appealability shall issue.
3. The Clerk is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 26th day of October 2021.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

cc:    Geovanny Padron
M37019
Okeechobee Correctional Institution
Inmate Mail/Parcels
3420 NE 168th Street
Okeechobee, FL 34972
PRO SE

Brian Hernan Zack
State of Florida - Office of the Attorney General
1 SE 3rd Avenue, Suite 900
Miami, FL 33131
Email: brian.zack@myfloridalegal.com